**Van Bering ROBINSON,**
**Plaintiff–Appellee,**

v.

**John MARUFFI, Joseph Polisar, Clarence Kraemer and Eloy Whitey Hansen, Chief of Police, Defendants–Appellants.**

No. 86–1148.

United States Court of Appeals, Tenth Circuit.

Jan. 19, 1990.

Wayne C. Wolf, Civerolo, Hansen & Wolf, P.A., Albuquerque, N.M., (Anthony J.D. Contri, Civerolo, Hansen & Wolfe, P.A., Albuquerque, N.M., was also on the brief) for defendants-appellants.

David L. Plotsky, Toulouse, Toulouse & Garcia, P.A., Albuquerque, N.M., (James R. Toulouse, Toulouse, Toulouse & Garcia, P.A., Albuquerque, N.M., was also on the brief) for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and McWILLIAMS and LOGAN, Circuit Judges.

HOLLOWAY, Chief Judge.

This appeal arises out of a civil rights action brought under 42 U.S.C. §§ 1983, 1985 and 1986 by Van Bering Robinson against three Albuquerque police officers, John Maruffi, Joseph Polisar and Klarence Kraemer, the Chief of Police, Eloy "Whitney" Hanson, and the City of Albuquerque for deprivation of his constitutional rights.

Robinson alleged that the individual defendants caused the bringing of criminal charges against certain prosecution witnesses, which would then be dismissed for their false testimony before the grand jury and at the trial implicating Robinson in the murder of an Albuquerque police officer, Phil Chacon. Robinson alleged that the defendants knowingly permitted the false testimony to be used for the sole purpose of having him prosecuted, convicted and punished for Chacon's murder.

The defendants answered, denying that they participated in the conduct alleged by Robinson. The defendants also raised various affirmative defenses, including the statute of limitations. After a twelve day trial, the jury returned a verdict for Robinson in the amount of $75,000 against all individual defendants, finding that they deprived Robinson of his Constitutional rights. The jury found that the City did not deprive Robinson of his Constitutional rights.

The individual defendants appealed, raising these issues: (1) Robinson's claims were barred by the statute of limitations; (2) Robinson was collaterally estopped from pursuing this civil rights action;[1] (3) Robinson failed to prove the necessary causal link between the individual defendants' alleged conduct and his alleged injuries; (4) it was prejudicial error for the trial court not to instruct the jury on entrapment; (5) several jury instructions were erroneous, and taken as a whole, highly prejudicial; (6) the court erred by allowing Robinson's counsel to call witnesses for direct examination and not allowing defendants' counsel immediate cross-examination; and (7) the court's award of attorneys' fees to plaintiff Robinson was in error. We affirm.

## I.

## BACKGROUND

There was evidence tending to show these facts, considering the record in the light most favorable to the jury verdict as we must, *Rock v. McCoy*, 763 F.2d 394, 396 (10th Cir.1985):

During the early evening hours on September 10, 1980, a Kinney's shoe store in Albuquerque was robbed by a masked black male carrying a pistol. The robbery was witnessed by some children who ran into the Albuquerque Woman's Center across the street and told some people of the robbery, including Officer Chacon. Officer Chacon left the Center and rode his motorcycle across the street where he was told by a Kinney's shoe store employee the direction in which the robber headed. Officer Chacon pursued the robber's vehicle in that direction. Shortly thereafter two shots were heard and Officer Chacon was found lying underneath his motorcycle, struck by both shots. He died from the wounds.

On September 12, 1980, Robinson and his friend, Reginald Walker, were arrested for the murder of Officer Chacon on a Crimestopper's tip. The grand jury returned a no-bill and refused to indict Robinson for Chacon's murder, the armed robbery and conspiracy charges of the shoe store. Nearly six months later, Robinson was again subject to a grand jury investigation. This time, with confession testimony of Walker, Robinson was indicted for the armed robbery of the Kinney's shoe store and the murder of Officer Chacon.

As part of the background to that indictment of Robinson, Maruffi had been assigned in early January 1981 to investigate the Chacon murder. Within a few days, Maruffi prepared and sent a memorandum to Chief Hansen, outlining the proposed investigation and requesting the assistance of defendants Kraemer and Polisar. This memorandum stated that a daily surveillance would take place at Walker's residence which "should successfully result in the apprehension of Walker for an in-

---

**1.** Defendants assert this defense for the first time in their appellate briefs. Because they did not raise this affirmative defense before the trial court, defendants waived their right to have us review this issue on appeal under the general rule. *See Horwitz v. Bd. of Med. Examiners of State of Colo.*, 822 F.2d 1508, 1512 (10th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987); *Schramm v. Oakes*, 352 F.2d 143, 150 (10th Cir.1965); Fed.R.Civ.P. 8(c).

progress felony crime. The probability of Walker's willingness to cooperate in the [Chacon] homicide investigation would increase considerably if the in-progress arrest was for a violent crime (robbery) rather than a property crime (burglary)." Addendum to Appellee's Brief, No. 252.[2] Maruffi believed at the time he wrote the memorandum that both Robinson and Walker were involved in the armed robbery and murder of Officer Chacon.

Shortly after the memorandum was written, surveillance began at Walker's and Robinson's shared residence. On January 15, 1981, Robinson met Gene Green, a convicted felon who had been spending time in jail until he became employed by Maruffi as an informant. Green moved next door to Robinson and began to spend time with him. During their acquaintanceship, both Robinson and Green committed various property crimes and an attempted armed robbery of a Jack-in-the-Box restaurant located across the street from the scene of Chacon's murder. Robinson was arrested on these charges by defendants Maruffi and Polisar.[3]

On January 17 Walker's landlady, Sue Goett, was robbed outside Robinson's and Walker's apartment. Both Robinson and Walker were under surveillance during the time Ms. Goett was robbed. Neither the six police officers conducting the surveillance, nor any other individual, saw Robinson or Walker commit the robbery. Ms.

Goett gave a statement to Maruffi in which she stated that less than a minute after she had been robbed, Walker came running up to her and gave chase in the direction that the robber fled. Ms. Goett did not identify Walker as the assailant. However, Maruffi had obtained a statement from Green two days earlier in which Green stated Walker bragged about committing the robbery. With Green's statement, Maruffi prepared an affidavit and obtained an arrest warrant for Walker. On February 20 Walker was arrested for the Goett robbery. Later that month Walker was indicted for the Goett robbery.

In early March 1981, facing the possibility of going to jail for the Goett robbery, Walker gave statements to Maruffi and Polisar incriminating Robinson and himself in the Kinney shoe store robbery and Officer Chacon's murder. He also stated that the car of Barry Foster, Robinson's foster brother, was used in the armed robbery and murder. Walker described how Foster threatened him by telling him that anyone who talked about the case would be killed. In exchange for Walker's testimony against Robinson for the armed robbery and murder, Walker would plead guilty to charges pending against him and receive five years' unsupervised probation. Walker was also provided with some money and relocated in Tucson.

2. The memorandum also stated that:
ARREST AND INTERVIEW
At the time of his [Walker's] arrest for the *in-progress crime,* Walker would be thoroughly interviewed after being advised of his Constitutional rights and having waved [sic] his right to counsel. The interview would take place prior to any formal arrest (booking charges). The justification for the interview would stem from Walker's willingness to cooperate as he has so often demonstrated in the past. During previous investigations conducted by writer [Maruffi], Reginald Walker was frequently willing to cooperate after being taken into custody for property crime violations. Writer successfully used Walker as an informant on more than one occasion and found him easy to talk with during interviews conducted subsequent to his arrests.
*Written Statement*
Writer would evaluate Walker's potential as a State's witness after establishing his involve-

ment in the homicide. A written statement would be obtained detailing the facts surrounding the homicide. The statement would contain any and all admissions and accusations made at this time. In addition, all new information that Walker provides would be investigated and the findings would be forwarded to the District Attorney's Office to be used as new evidence for prosecution.
*DESIRED RESULTS*
Through information supplied by Walker and through his subsequent testimony a prosecutable case would be obtained against the offender involved in the killing of Officer Phil Chacon.
*Id.* (emphasis in original).

3. Robinson was convicted of these crimes in state court. *See State v. Robinson,* 99 N.M. 674, 662 P.2d 1341 (1983), *cert. denied,* 464 U.S. 851, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983).

Shortly after Walker gave his statement that Foster had intimidated him, Foster's car was impounded by the defendants although it did not match the description of the get-away car given by the witnesses at the scene. On March 12, 1981, Foster was indicted for intimidating a witness due to Walker's testimony to the grand jury. On March 15 Foster was called to pick up his car by the Albuquerque Police Department. Not knowing of the indictment, Foster attempted to retrieve his car and was arrested. Foster was searched and a small vial of cocaine was allegedly found in his pocket.[4] Because Foster had been on probation, a preliminary parole revocation hearing was held on April 2. At this hearing, Foster denied that he was in possession of cocaine at the time he went to claim his car. The hearing officer recommended that Foster be continued on parole supervision until his charge was adjudicated. If Foster's parole was revoked, he could have been sentenced to jail for a period up to twenty years.

Sometime between April 3 and April 5, 1981, Foster called an investigator for the District Attorney's office.[5] Foster told Investigator Pierengelli during this conversation that his car was not involved in the Chacon murder and he would do or say anything to avoid going to the penitentiary. On April 6, Foster gave a statement to Maruffi and Polisar which implicated Robinson in Officer Chacon's murder. On April 7 Foster was released on his own recognizance; although his cash bond had previously been set at $250,000. Following Foster's indication of his willingness to give a statement implicating Robinson, charges were dropped and his parole continued.

At Robinson's first criminal trial in May and June, 1981, Walker broke his agreement with Maruffi and testified that his grand jury testimony about his and Robinson's involvement in the Kinney's shoe store armed robbery and Officer Chacon's murder was false and that Maruffi forced him to memorize his story.[6] Walker's initial plea agreement was withdrawn, the charges implicating Walker in the Goett and Kinney robberies were dismissed, and Walker pled guilty to perjury for which he served an eighteen month sentence.

At the conclusion of this first criminal trial of Robinson which occurred in May and June 1981, Robinson nevertheless was found guilty of Officer Chacon's murder and the Kinney's shoe store armed robbery, as well as the additional property crimes he committed during the surveillance period. He was sentenced to life imprisonment for the murder and armed robbery convictions and an additional eight years for the remaining counts. The eight year sentence was to run consecutively to the life sentence.

Robinson appealed these convictions to the New Mexico Supreme Court. The Court reversed the murder, armed robbery and conspiracy convictions due to the prosecutor's improper examination and impeachment of an eyewitness. *State v. Robinson,* 99 N.M. 674, 662 P.2d 1341 (1983), *cert. denied,* 464 U.S. 851, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983). Robinson's second criminal trial was held in October 1983. This time, the false case, including Walker's perjured testimony, was presented again against Robinson, but with Robinson's counsel's ability to expose evidence of perjured testimony being used against Robinson by the State, Robinson was acquitted of the murder and armed robbery charges. This civil rights suit, commenced August 17, 1984, followed his acquittal.

II.

A. STATUTE OF LIMITATIONS

 Defendants argue that all of Robinson's causes of action are barred by the

---

**4.** At Robinson's first trial, Foster testified that the cocaine was his. During Robinson's second trial, Foster testified that the cocaine vial had been planted on him.

**5.** This conversation between Foster and Investigator Pierengelli was taped, but for reasons not explained in the record, the tape was not made available to Robinson's counsel until just prior to Robinson's second murder trial.

**6.** Although it is not clear whether Walker testified at Robinson's 1981 criminal trial that his grand jury testimony regarding his alleged intimidation by Foster was fabricated, Walker did testify to that effect in the civil trial below.

applicable statute of limitations. The parties do not dispute the applicability of New Mexico's three-year limitations period for this civil rights action, *see Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985) (§ 1983 actions best characterized as personal injury actions and subject to New Mexico three-year limitation); *aff'g Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984); N.M.Stat.Ann. § 37–1–8 (1978). Defendants say that as to the conspiracy claim, each overt act occurred outside the three-year limitations period and that all the other claims for false arrest, false imprisonment, and malicious prosecution occurred more than three years before this civil rights suit was commenced in August 1984. Thus the claims are all time-barred.

In rejecting the limitations arguments, the trial court held that the defendants' "wrongful acts [were] a single continuing violation of Plaintiff's constitutional rights tied together by a plan to "get" Van Robinson at all costs." I.R., Memorandum Opinion & Order, ("Order") dated 1–13–86, p. 3. In instructing the jury, the trial court stated that the alleged conspiracy was for deprivation of Robinson's liberty interest without due process of law under the fourteenth amendment, and the right to a fair trial under the sixth amendment. I.R., Jury Instruction No. 3,[7] Jury Instruction No. 7; *supra,* note 7, Jury Instruction No. 15 ("Plaintiff alleges the defendants conspired among themselves to deprive him of his constitutional rights") *Id.;* Instruction No. 16 ("That the purpose of the conspiracy was either to obtain a false conviction of plaintiff based on perjured testimony, or

to cover up the fact that perjured testimony was used against plaintiff in the trial in order to prevent his release from prison"). *Id.*

We are persuaded that the limitations defense lacks merit. This case is similar to *Venegas v. Wagner,* 704 F.2d 1144 (9th Cir.1983). There Vanegas alleged a conspiracy by police officers to cause his malicious prosecution on groundless charges by tampering with witnesses and knowingly presenting false evidence and perjury to the jury. The Ninth Circuit held that under its controlling precedent, *Cline v. Brusett,* 661 F.2d 108 (9th Cir.1981), the civil rights claim—asserting the elements of common law malicious prosecution—did not accrue until the reversal of Vanegas' conviction by the California Supreme Court's holding of insufficient evidence, leading to Vanegas' release. 704 F.2d at 1145–1146, citing 52 *Am.Jur. 2nd Malicious Prosecution* § 6 (1970) and *Restatement (Second) of Torts* § 672 (1977).

Here also there was an allegation of conspiracy, which is a viable claim under § 1983. *Anthony v. Baker,* 767 F.2d 657, 662 (10th Cir.1985); *Taylor v. Gilmartin,* 686 F.2d 1346, 1355 (10th Cir.1982); *Slavin v. Curry,* 574 F.2d 1256, 1261 (5th Cir. 1978). The conspiracy was essentially to cause malicious prosecution as in *Venegas.* It began more than three years before the commencement of this civil rights suit, but it continued on through the second criminal trial of Robinson in October 1983, when the false case was presented again on retrial. Not until the end of this second criminal trial, with Robinson's acquittal, did his malicious prosecution conspiracy claim ac-

---

**7.** Jury Instruction No. 3 reads in part:

The plaintiff seeks damages from the defendants, Maruffi, Polisar and Kraemer on a claim that they deprived him of liberty without due process of law by procuring perjured testimony against him, concealing and fabricating critical evidence, by arresting, imprisoning or prosecuting him without probable cause, or by conspiring to do any of these acts ... The plaintiff claims that these actions deprived him of his right to a fair trial.

. . . .

Jury Instruction No. 7 reads in part:

. . . .

In order to recover damages under the federal Civil Rights Act, plaintiff must prove to you by the greater weight of the evidence any or all of the following acts:

1. He was deprived of his right to be free from false arrest and to be free from false imprisonment; or

2. He was deprived of his right to be free from a malicious prosecution; or

3. He was deprived of his right to liberty without due process of law; or

4. He was deprived of his right to a fair trial; or

5. He was deprived of these rights by a conspiracy.

crue,[8] as in *Venegas* and *Cline. See also Rose v. Bartle*, 871 F.2d 331, 348–350 (3rd Cir.1989); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir.1988). The earlier reversal of his prior murder, armed robbery and conspiracy convictions for trial error by the prosecution and remand for retrial, *State v. Robinson*, 662 P.2d at 1346, did not cause the malicious prosecution claim to accrue because Robinson remained subject to those serious charges and went on trial for his life again in October 1983 when the malicious prosecution conspiracy again resulted in presentation of the false case against him.

There were other claims asserted of false arrest and false imprisonment. We are mindful that discrete claims of such wrongs, despite their being averred as a continuing wrong, have been held barred where outside the time bar. *Compare McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir.1988) *with Corbitt v. Andersen*, 778 F.2d 1471, 1474 (10th Cir. 1985). We are persuaded, however, that all such claims here were essentially part of the malicious prosecution conspiracy. In his order rejecting the limitation defense the trial judge disregarded the defendants' characterization of the case as discrete claims and acts including false arrests and fabrications. The judge instead accepted the plaintiff's characterization that this was one conspiracy to "frame" Robinson and was a single continuing violation of "plaintiff's constitutional rights tied together by a plan to 'get' Van Robinson at all costs," Order, pp. 2–3, which continued until his acquittal in October 1983. We agree and are also convinced the essence of the claim was conspiracy for malicious prosecution which accrued within the limitations period.

We hold that the civil rights case of Robinson based on conspiracy for malicious prosecution was not time barred when it was commenced on August 17, 1984—well within the three-year limitation period following the October 1983 second trial where

the false case against Robinson was again presented and Robinson was finally acquitted.

## B. CAUSATION

Defendants argue, as they did before the trial court, that they cannot be liable for Robinson's constitutional deprivations because the causal connection between their misconduct and Robinson's injuries was broken by subsequent, independent and intervening acts of the prosecutor, grand jury, state trial court and the New Mexico Supreme Court. Brief of Appellants at 21. Specifically defendants contend that they were not responsible for the prosecution of Robinson, the use of fabricated evidence, nor the admission of the manufactured evidence by the trial judge. We disagree.

We believe there was sufficient evidence for the jury to find that the defendants purposefully concealed and misrepresented material facts to the district attorney which may have influenced his decision to prosecute Robinson. This is clear in light of the testimony the defendants manufactured for Reginald Walker and Barry Foster, the state's key witnesses. *See Anthony v. Baker*, 767 F.2d 657, 662 (10th Cir.1985) (state officials are liable for federal constitutional deprivations when they "conspire to procure groundless state indictments and charges based upon fabricated evidence or false, distorted, perjurious testimony presented to official bodies in order to maliciously bring about a citizen's trial or conviction"); *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir.1988) (jury found that police officers' concealment and misrepresentation of material facts to the prosecutor was a likely factor in the prosector's choice to charge the plaintiff with murder).

Defendants' argument that their misconduct is shielded by the acts of the prosecutor, the grand jury, and the trial and appel-

---

**8.** It is now generally accepted that the accrual of federal causes of action is controlled by federal rather than state law. *Ebrahimi v. E.F. Hutton & Co., Inc.*, 852 F.2d 516, 520 (10th Cir.1988); *see also Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir.1987) (accrual of § 1983 action is matter of federal law).

late courts is disingenuous. Their actions did not make an intervening break from the conduct of the defendants. In fact, their actions were dependent in that they relied upon the falsified statements and testimony produced by the defendants in making their respective decisions. "[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision.... If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. *They cannot hide behind the officials whom they have defrauded." Jones*, 856 F.2d at 994 (emphasis added); *see also Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir.1986).

## C. JURY INSTRUCTIONS

The defendants argue that numerous errors were committed by the trial court with respect to the instructions given to the jury. The specific errors preserved for appeal include: (1) failure of the trial court to instruct the jury on the legal definition of entrapment; (2) error in instructing the jury as to Robinson's claims involving probable cause; (3) error in instructing the jury on false arrest for lack of evidence; (4) error in instructing the jury on Robinson's theory that the defendants delayed his release from prison for lack of evidence; and (5) error in Instruction No. 7 which was misleading in that it defined both the constitutional right to be free from malicious prosecution and the right to a fair trial. We find these arguments are without merit.

*The Entrapment Instruction*

■ Defendants first argue that the trial court erred by its refusal to instruct the jury on the legal definition of entrapment. They assert that their proposed entrapment instruction would have allowed the jury to determine what police conduct was legal and appropriate in their handling of the

Chacon murder investigation. Finally, the defendants claim that the absence of the proposed entrapment instruction was severely prejudicial and affected a substantial right to present one of their defenses. We find both arguments to be untenable.

The issue whether Robinson was entrapped by police informant Green or the defendants to commit property crimes and an attempted armed robbery in early 1981 is simply irrelevant in this civil rights lawsuit. Here, the critical determination was whether the defendants' conduct as a whole, in their pursuit of Robinson for the Chacon murder, was unconstitutional. It was not the manner or scope in which Green involved himself with Robinson that was relevant to Robinson's case; rather, it was the underlying purpose behind the defendants' use of Green as an informant which was relevant. Any factual determination by the jury that Robinson was not entrapped to commit the above crimes by Green or the defendants would not have established probable cause or a good faith defense for defendants in unconstitutionally pursuing Robinson for Officer Chacon's murder. The district court properly refused to charge the jury on the legal definition of entrapment.

Defendants also argue that their proposed entrapment instruction supported their defense that the surveillance of, and the undercover operation concerning Robinson, was mandated by their witnessing Robinson's criminal activity. Reply Brief of Appellants, p. 20. However, defendants' argument misses the mark. Such a theory would not excuse the defendants for their unconstitutional conduct. A party is not allowed an instruction if their defense theory is not factually or legally supported. *See Higgins v. Martin Marietta Corp.*, 752 F.2d 492, 496 (10th Cir.1985); *Gander v. Mr. Steak of Sun Ray, Inc.*, 774 F.2d 920, 924 (8th Cir.1985); *cf. Voutour v. Vitale*, 761 F.2d 812, 824–825 (1st Cir.1985).

*Insufficient Evidence*

■ The defendants argue that there was no evidence to support any instruction for Robinson's claims that he was initially

arrested for Officer Chacon's murder and that they delayed his release from prison.

In support of the false arrest theory, Robinson presented evidence which showed Maruffi and Pulisar targeted him and conspired with others to build a case against him for the Chacon murder. Evidence was also presented which showed that the arrest of Robinson for the property crimes committed while under police surveillance was part of the defendants' overall scheme to frame and arrest Robinson for Officer Chacon's murder. Finally, Robinson presented evidence that the government's two key witnesses, Foster and Walker, were set-up by the defendants with false criminal charges which were subsequently dismissed for their false testimony against Robinson. Although defendants presented conflicting evidence, Robinson was entitled to an instruction on his theory of the case. *See, General Motors Corporation v. Walden*, 406 F.2d 606, 609 (10th Cir.1969) ("A party is entitled to an instruction on his theory of the case only if that theory is supported by competent evidence").

We are also convinced that there was competent evidence to support Robinson's claim of denial of liberty in that the defendants were responsible for his continued imprisonment for the Chacon murder conviction. The defendants say there were other convictions with consecutive sentences so that Robinson would nevertheless have been imprisoned. The argument is unpersuasive. These factors were there, but beyond doubt imprisonment for murder and armed robbery—with its effect on conditions of treatment and the stress of such grave false convictions—were legitimate factors to consider in awarding damages for the wrongs inflicted by the defendants through their conspiracy for malicious prosecution.

*Lack of Probable Cause*

■ Next, defendants argue it was error for the trial court to instruct the jury on Robinson's theories involving lack of probable cause. The gist of defendants' argument again is that probable cause had already been determined under state court proceedings, thus making a new determina-

tion inappropriate. We hold that Robinson presented sufficient evidence upon which the jury could find that the defendants' conduct defiled the investigation, the grand jury proceedings and trial, and was so outrageous as to deny Robinson his constitutional right to a proper probable cause determination. Defendants' argument was specifically rejected by this court in *Anthony v. Baker*, 767 F.2d 657, 663 (10th Cir. 1985); *see also, Jones v. City of Chicago*, 856 F.2d at 993–994. The district court did not err by instructing the jury that Robinson could recover for violation of his civil rights for false arrest or false imprisonment without probable cause. *See, Rex v. Teeples*, 753 F.2d 840, 842–843 (10th Cir. 1985). We are convinced that the charge did not allow duplicative recoveries here because these were all matters leading up to the trials at which the false testimony was presented—all part of the conspiracy to "get" Robinson, as the trial judge said, all steps in the malicious prosecution. The modest $75,000 verdict suggests no duplicative recovery.

Finally, defendants argue that Instruction No. 7 was duplicative and misleading by allowing Robinson to recover either for malicious prosecution or for denial of a fair trial. We do not read these theories as duplicative or confusing. The theories could both be argued on this record and no unreasonable verdict resulted.

IV.

DENIAL OF CROSS–EXAMINATION

Defendants contend that there were three witnesses called by Robinson for direct examination who were "never allowed to be cross-examined or their cross-examination was significantly delayed." Brief of Appellants at 44. We find no error or abuse of discretion on these matters.

■ First, defendants argue they "never had the opportunity to cross-examine [Penny Walker]," who had been temporarily dismissed during her direct examination. *Id.* However, defendants made no objection to her temporary excusal, Vol. II, p. 200, and later during the trial agreed to her

being permanently excused. Vol. VII, p. 1141.

■ Second, defendants say their cross-examination of Foster and Maruffi was significantly delayed.[9] While Foster was testifying on direct, defendants' counsel requested a bench conference to discuss the admissibility of tape recorded testimony. The court then recessed and trial resumed the following morning. Robinson's counsel requested that Foster's examination be interrupted so that Maruffi could be called to testify. Defendants' counsel did not object. After Maruffi's examination, defendants' counsel objected to the sequence of examination. Vol. V., p. 670. Counsel for the defendants then requested that the trial proceed in ordinary sequence, but also agreed that Foster could be recalled for additional direct examination in lieu of the completion of Maruffi's examination. Vol. V., p. 670. Counsel for the defendants then cross-examined Foster upon completion of Robinson's direct. Vol. VI., p. 869. Maruffi was then recalled for completion of Robinson's direct and immediately passed to defendants for their cross-examination. Vol. VI., p. 987.

Defendants' argument that they specifically asked to cross-examine Foster at the time Robinson's counsel requested to call Maruffi, and were refused the opportunity, is frivolous. Defendants' counsel, at the time Maruffi was requested to testify, stated no objection and said that all he wanted was to be able to ask Foster some questions. Vol. V., 590. This statement is a far cry from that presented in the defendants' brief here.[10] Because defendants failed to timely object to the sequence of witnesses, had an opportunity to cross-examine all the witnesses, and failed to show that the trial court abused its discretion in permitting the calling of the witnesses, the

defendants' claim of error is rejected. *See,* Fed.R.Evid. 611(a); *United States v. DeLuna,* 763 F.2d 897, 911–912 (8th Cir.1985).

## V.

## ATTORNEYS' FEES

Defendants argue that because the judgment should be reversed, we should also reverse the award of attorneys' fees to plaintiff. Since we do not agree that the judgment should be reversed, the request to reverse the fee award is denied. The plaintiff-appellee requests an award of attorneys' fees for the appeal, which we agree should be allowed. This fee claim is remanded to the district court for further proceedings to determine a proper award of fees for the appeal. *See Ramos v. Lamm,* 713 F.2d 546, 556 (10th Cir.1983); Schwartz and Kirklin, *Section 1983 Litigation; Claims, Defenses, and Fees,* § 17.7; 42 U.S.C. § 1988.

## VI.

## CONCLUSION

Accordingly, the judgment and the award of attorneys' fees below are AFFIRMED; the case is REMANDED on the plaintiff's claim for his appellate attorneys' fees for further proceedings and the award of such fees.

IT IS SO ORDERED.

---

**9.** Although Maruffi is a defendant, the complaint is made that the defense was impaired in that when Maruffi was called during plaintiff's case, the defense was not allowed to cross-examine Maruffi immediately after his direct examination and the court allowed the plaintiff instead to continue with Foster's examination. The argument is not convincing because the defense was later able to develop Maruffi's testimony as it desired.

**10.** In a similiar vein, defendants argue that they were denied a substantial right because they were unable to cross-examine all the witnesses. Brief of Appellants, p. 47. However, they cite nothing in the record to support such a claim. In fact, our review of the record indicates that defendants were never deprived of the opportunity to cross-examine any witness.