**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DAVID G. HOWL,

    Plaintiff - Appellant,

v.

NOE J. ALVARADO, Individually,

    Defendant - Appellee.

No. 17-2163
(D.C. No. 2:17-CV-00380-PJK-SMV)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **EBEL**, and **EID**, Circuit Judges.
_____

Plaintiff David Howl challenges the district court's decision to dismiss his 42

U.S.C. § 1983 claims asserted against Defendant Noe Alvarado, a New Mexico State

Police officer. On appeal, Howl contends his claims alleged that Officer Alvarado

violated Howl's constitutional rights by acting in concert with a confidential

informant to plant false evidence against Howl in his truck and on his person, which

the officer then "discovered" during the course of a pretextual traffic stop. The

district court, in dismissing Howl's claims under Fed. R. Civ. P. 12(b)(6), construed

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

his claims more narrowly to allege, instead, that Officer Alvarado simply discovered actual evidence incriminating Howl when the officer conducted an unlawful search of Howl's truck, without alleging that Officer Alvarado had conspired in advance with a confidential source to plant the evidence on or near Howl. We conclude that, although Howl's allegations are not a model of clarity, he sufficiently alleged that Officer Alvarado acted with the confidential informant to fabricate the evidence incriminating Howl. Those allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss. Therefore, having jurisdiction under 28 U.S.C. § 1291, we REVERSE the district court's decision to dismiss Howl's § 1983 claims and REMAND this case to the district court for further proceedings.

## I. UNDERLYING FACTUAL BACKGROUND

Accepting Howl's well-pled factual allegations as true, see Sylvia v. Wisler, 875 F.3d 1307, 1313 (10th Cir. 2017), the facts underlying this dispute are these. "At around midnight on February 3rd, 2012, Mr. Howl was driving his pickup truck . . . in Clovis, New Mexico." (Aplt. App. 20 ¶ 6.) He had a passenger with him, Brandy Medina. "Medina was working as an informant for [Defendant] Alvarado." (Id. 23 ¶ 17.) "Medina asked [Howl] to stop the vehicle so that she could make a telephone call. After making the telephone call . . . Officer . . . Alvarado claimed to have seen Mr. Howl's vehicle cross the center line" of the street on which he was driving. (Id. 20 ¶ 6.)

"[A]fter stopping Mr. Howl's pick-up truck," Officer Alvarado "requested that Mr. Howl produce his driver's license, registration and insurance." (Id. ¶ 7.) Howl

2

"explained to [Officer] Alvarado several times that his registration and insurance had been stolen from the pick-up truck earlier. Alvarado asked [passenger] Medina to look in the glove box of the pick up truck for the registration. [Howl] again told Alvarado these documents had been stolen." (Id. 20-21 ¶ 7.) Officer "Alvarado then asked that Mr. Howl step out of the pick-up truck." (Id. 21 ¶ 7.) The officer checked for outstanding warrants for Howl—there were none.

> [Officer] Alvarado then walked back to the pick-up truck and asked [passenger] Medina "where is it." Alvarado leaned into the open front door of the pick-up truck bending into the vehicle half way, and asked Brandy Medina [to] look for the insurance and registration documents for the pick-up truck despite having been previously told that the documents were not in the pick-up truck. Medina complied by opening the center console. When she did so, [Officer] Alvarado saw a glass pipe.

(Id. ¶ 10.)

Officer Alvarado also found drugs on Howl. According to Howl, just before he exited the truck, passenger Medina handed him "a pack of cigarettes which [Howl] accepted without inspection." (Id. ¶ 8.) At some point during the stop, Officer Alvarado "removed a cigarette pack from [Howl's] pocket and notice[d] a small baggie of crystalline substance in between the cigarette box and its cellophane wrapper." (Id. 23 ¶ 18.) The substance "tested . . . allegedly positive for methamphetamines"; so did the pipe. (Id.) But Howl was "physically unable [either] to use the pipe" or "to place [the] alleged contraband between the wrapper and box of the cigarettes because he only has one hand." (Id. 22 ¶ 11, 23 ¶ 18.)

"Neither the glass pipe nor any other alleged drugs belonged to Mr. Howl." (Id. 22 ¶ 11.) He "tested negative for drugs" "within hours of his arrest." (Id. 22

3

¶ 11, 23 ¶ 20.)  Nevertheless, Officer Alvarado arrested Howl.  He "was charged with failure to maintain lane, no proof of insurance, possession of paraphernalia and possession of methamphetamine."  (Id. 23 ¶ 18.)

Officer Alvarado "allowed [passenger Medina] to walk away from the scene despite the fact that [Howl] told Alvarado she had a fire-arm on her and was in possession of dope.  Alvarado did not check for any warrants or otherwise search Medina before allowing her to walk away from the scene."  (Id. 21 ¶ 10.)

A jury convicted Howl of all four charges and the state trial court "sentenced [Howl] to six and one half years['] incarceration, with the final two and one-half years suspended" (id. 25 ¶ 25).  He "was incarcerated for seventeen months and was required to wear an ankle monitor after his release from prison."  (Id. 27 ¶ 31.)

While Howl was serving his sentence, his direct appeal was pending before the New Mexico Court of Appeals.  That court eventually determined that Howl had made a prima facie claim that his defense attorney was ineffective for not moving to suppress the pipe and methamphetamine found during the traffic stop.  See State v. Howl, 381 P.3d 684, 688-91 (N.M. Ct. App. 2016).  The New Mexico Court of Appeals, therefore, remanded the case to the state trial court, where Howl "filed a Motion to Dismiss Criminal Complaint and requested an evidentiary hearing" (Aplt. App. 26 ¶ 28).  The state trial court granted that motion, "[Howl's] sentence . . . was vacated and the Criminal Information was dismissed with prejudice."  (Id. ¶ 29.) This was "after [Howl] had completed his time of incarceration."  (Id. 22 ¶ 13.)

4

## II. THIS LITIGATION

Howl then sued Officer Alvarado under 42 U.S.C. § 1983, asserting claims for false arrest and malicious prosecution.[1] Officer Alvarado moved to dismiss those claims under Fed. R. Civ. P. 12(b)(6), asserting he is entitled to qualified immunity. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). Here, the district court, addressing only the first inquiry, concluded Howl had failed to allege any constitutional violation and, therefore, dismissed his case with prejudice. Howl challenges that decision on appeal.

## III. STANDARD OF REVIEW

"We review de novo the district court's dismissal under Rule 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." United States ex rel. Reed v. KeyPoint Gov't Solutions, 923 F.3d 729, 764 (10th Cir. 2019) (citations, internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1] Howl stated during oral argument that he is not asserting a separate § 1983 claim for unlawful search.

5

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Relevant here,

> [t]he Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element [of a claim]. And that standard is still fundamentally one of notice pleading intended to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense.

Sylvia, 875 F.3d at 1326 (citations, internal quotation marks omitted). Although "a complaint need not provide 'detailed factual allegations,' it must give just enough factual detail to provide 'fair notice of what the . . . claim is and the grounds upon which it rests.'" Warnick v. Cooley, 895 F.3d 746, 751 (10th Cir. 2018) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In deciding whether the plaintiff has adequately stated a claim for relief, we view "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff]," Jones v. Hunt, 410 F.3d 1221, 1229 (10th Cir. 2005), accepting the plaintiff's well-pled facts as true, see Sylvia, 875 F.3d at 1313, and drawing all reasonable inferences in the non-moving party's favor, see Doe v. Woodard, 912 F.3d 1278, 1285 (10th Cir. 2019), cert. denied, 139 S. Ct. 2616 (2019).

"Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Dias v. City & Cty. of Denver, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks, alterations omitted).

6

## IV. ANALYSIS

To give context to our Rule 12(b)(6) analysis, we begin by noting generally what Howl must plead to state his two § 1983 claims against Officer Alvarado, one for false arrest and the other for malicious prosecution. See Iqbal, 566 U.S. at 675.

As for the false arrest claim, a warrantless arrest like the one at issue here is constitutional if the officer has probable cause to believe that the person arrested has committed a crime. See Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Id. (internal quotation marks omitted). "When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to [qualified] immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." Id. (internal quotation marks omitted). To prove a false arrest, therefore, the plaintiff must allege that the arresting officer acted without probable cause.

As to the § 1983 claim for malicious prosecution, "a plaintiff must show: '(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.'" Montoya v. Vigil, 898 F.3d 1056, 1066 (10th Cir. 2018) (quoting Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir.

7

2008)).  Both Howl's claims, then, require him to allege that Officer Alvarado lacked probable cause to arrest and charge Howl with the two drug offenses.  See Puller v. Baca, 781 F.3d 1190, 1197 (10th Cir. 2015).

Whether the district court correctly dismissed Howl's false arrest and malicious prosecution claims turns on whether Howl had alleged that Alvarado conspired with his informant, Medina, to plant the critical incriminating evidence on Howl or within his possession and control.  Officer Alvarado and the district court interpreted Howl's theory to be simply that Officer Alvarado lacked a quantum of information sufficient to establish probable cause to arrest and charge Howl with the two drug offenses because the evidence the officer had—the pipe and methamphetamine—were obtained through an unlawful search of Howl's truck.

But Howl argues on appeal that his theory always was (and is), instead, that Officer Alvarado had no probable cause to arrest and charge Howl with the two drug offenses because Officer Alvarado was acting in concert with the confidential informant to plant the pipe in Howl's truck and the methamphetamine on his person, both of which Officer Alvarado then "discovered" during a pretextual traffic stop.  As we explain, we conclude that the complaint adequately alleged that Officer Alvarado was involved in fabricating evidence.

Turning to the amended complaint, Howl alleged that Officer "Alvarado planned on arresting Plaintiff [Howl] for alleged possession of [drug] paraphernalia before the [traffic] stop.  Plaintiff [Howl] alleges that [Howl's passenger] Brandy Medina was working as an informant for [Officer] Alvarado."  (Aplt. App. 23 ¶ 17

8

(emphasis added).)  Howl further alleged that Officer "Alvarado <u>intended</u> to <u>falsely arrest and accuse</u> Plaintiff [Howl] of criminal activities that were the sole responsibility of [Informant] Medina."  (<u>Id.</u> 21 ¶ 10 (emphasis added).)  These allegations in the complaint adequately charge that Officer Alvarado knew that Informant Medina would or had planted evidence that would incriminate Howl <u>before</u> the officer initiated the traffic stop.

Howl's complaint continues that Officer Alvarado "falsely arrested Plaintiff without probable cause and then maliciously prosecuted Plaintiff <u>knowing that he was innocent</u> of any criminal activity . . . ."  (<u>Id.</u> 27 ¶ 33 (emphasis added).)  Drawing all reasonable inferences in Howl's favor, <u>see</u> <u>Doe</u>, 912 F.3d at 1285, these allegations in the complaint are sufficient to place Officer Alvarado on fair notice that Howl was accusing him of acting in concert with the informant to plant fabricated incriminating evidence on Howl and in his truck.

Although not necessary to our holding, Howl's opposition to Officer Alvarado's Rule 12(b)(6) motion to dismiss is consistent with our reading of the complaint.  Howl argued, for example, in his opposition brief that he was

> complain[ing] about much more than an unlawful search of his vehicle. He includes false arrest and malicious prosecution . . . .  [Officer] Alvarado <u>intended</u> to stop Mr. Howl on a <u>pre-textual basis</u> and <u>maliciously</u>, and without probable cause <u>arrested</u> him <u>for</u> alleged <u>narcotics that were the sole property</u> of Alvarado's informant Brandy Medina.

(Aplt. App. 56 (emphasis added).)  Howl went on to cite <u>Malley v. Briggs</u>, 475 U.S. 335, 345 (1986), for the proposition that "[a] police officer who applies for an arrest

9

warrant can be liable for malicious prosecution if he should have known that his application failed to establish probable cause or _if he made statements or omissions in his application that were_ material and _perjurious or recklessly false_." Aplt. App. 57 (emphasis added) (internal quotation marks omitted).) Howl immediately followed that citation with his assertion that he "was _set up for an arrest_ without any probable cause for items that were not his." (Id.) Even more directly, Howl argued that he "was set up for an illegal, wrongful arrest and malicious prosecution _by Alvarado_." (Id. 58 (emphasis added).)

Howl continued by asserting that Officer "Alvarado _planned_ on _falsely_ arresting Mr. Howl and accusing him of criminal conduct _before the stop_. He had Brandy Medina working as an informant, despite the fact that she was solely responsible for any and all criminal activities on the night in question." (Id. 54-55 (emphasis added).) Howl further argued that Officer "Alvarado _intended_ to stop Mr. Howl on a pre-textual basis and maliciously, and without probable cause arrested him for alleged narcotics that were the sole property of Alvarado's informant Brandy Medina." (Id. 56 (emphasis added).) Howl also reiterated that he "was set up by an informant working for [Officer] Alvarado . . . for an illegal search, seizure, arrest, and malicious prosecution." (Id. 60.) These arguments that Howl made to the district court in opposing the motion to dismiss simply underscore that it was his theory in the district court that Officer Alvarado was in on the informant's planting

incriminating evidence on Howl and in his truck <u>before</u> the officer initiated a pretextual traffic stop.[2]

Admittedly Howl's amended complaint was poorly drafted and the advocacy on his behalf in the district court was not as clear as one would hope. Nevertheless, at the Rule 12(b)(6) motion to dismiss stage of litigation, we must draw all reasonable inferences in Howl's favor. <u>See</u> <u>Doe</u>, 912 F.3d at 1285. Doing so, we conclude that it was reasonable to infer that Howl alleged and preserved before the district court his theory that Officer Alvarado acted in concert with Informant Medina to plant false evidence on Howl and in his truck, prior to the pretextual traffic stop, in order to support Officer Alvarado's plan to arrest Howl and charge him with several drug offenses. Howl may or may not, ultimately, be able to prove his theory. But these are very serious charges and at this early stage in this litigation, he has adequately presented and preserved them.

Howl's alleged factual predicate for his false arrest and malicious prosecution claims, based on his theory that Officer Alvarado participated in fabricating the evidence against Howl, are sufficient substantively to survive the officer's motion to dismiss.[3]

---

[2] Officer Alvarado would be equally liable for false arrest regardless of whether the plan to plant the false evidence originated with Officer Alvarado or with Informant Medina, so long as Officer Alvarado knew of the plan to plant false evidence before the arrest.

[3] <u>See</u>, <u>e.g.</u>, <u>Wilkins</u>, 528 F.3d at 793 (denying qualified immunity on § 1983 claim alleging officers fabricated evidence by coercing witnesses to give false statements); <u>Pierce v. Gilchrist</u>, 359 F.3d 1279, 1281-82, 1285-1300 (10th Cir. 2004) (holding

We decline Officer Alvarado's invitation to affirm, alternatively, on two affirmative defenses. Officer Alvarado first argues that we can affirm because Howl is collaterally estopped from asserting that there was no probable cause to support his arrest and prosecution in light of the state court's determination during the criminal case that there was probable cause to support the drug charges against Howl. Officer Alvarado Howl raised this affirmative defense, see Fed. R. Civ. P. 8(c)(1), for the first time on appeal. Generally an appellate court will not grant a motion to dismiss based on an affirmative defense unless the defense is clear from the allegations in the complaint. See Fernandez v. Clean House, LLC, 883 F.3d 1296, 1299 (10th Cir. 2018). That is not the case here. Among other problems with this affirmative defense, the state court's probable cause determination was apparently based on the very evidence that Howl alleges Officer Alvarado fabricated.

Second, in a single sentence in a footnote in his appellate brief, Officer Alvarado asserts another affirmative defense, that at least Howl's false arrest claim is barred by the relevant statute of limitations. We need not address this argument, however, because the officer inadequately presented it. See United States v. Walker, 918 F.3d 1134, 1153 (10th Cir. 2019).

---

plaintiff adequately stated § 1983 claim against police chemist by alleging chemist "fabricated inculpatory evidence and disregarded exculpatory evidence, which led prosecutors to indict and prosecute" the wrong man for rape and other crimes); Robinson v. Maruffi, 895 F.2d 649, 650-51 10th Cir. 1990) (upholding jury verdict for plaintiff on § 1983 claim alleging officers used false testimony to prosecute him); see also Warnick, 895 F.3d at 752 (stating that "[e]vidence fabrication could . . . violate [a § 1983 plaintiff's] Fourth Amendment right").

We, therefore, REVERSE the district court's decision to dismiss Howl's false arrest and malicious prosecution claims and REMAND this case for further proceedings.

Entered for the Court


David M. Ebel
Circuit Judge

13

*Howl v. Alvarado*, No. 17-2163

**EID**, J., dissenting.

According to the majority, Howl sufficiently alleged that Officer Alvarado participated with Medina in planting incriminating evidence against him. Yet a straightforward reading of the complaint reveals that—as alleged by Howl—it was Medina who planted the evidence, and Officer Alvarado who, in turn, mistakenly relied on her. Misguided reliance on an informant does not equate to an instruction to fabricate. The majority properly points out that we are obligated to draw reasonable inferences from the complaint. Slip Op. at 5–6. However, in my view, a fabrication theory against Officer Alvarado is a step beyond an inference in this case. Because I would affirm the district court's dismissal, I respectfully dissent.

While the complaint is hardly a model of clarity, Howl's general theory comes through well enough. Howl believed, and repeatedly contended, that Medina was the true wrongdoer. He repeatedly implied or outright stated that Medina set him up while working as Officer Alvarado's informant. *See, e.g.*, Aplt. App'x at 21 ("[The] criminal activities . . . were the sole responsibility of Medina."); *id.* at 23 ("Medina had been in the sole control of the cigarettes all night . . . ."). And Howl repeatedly faulted Officer Alvarado for failing to investigate Medina's potential wrongdoing. *See, e.g.*, *id.* at 21 ("[Officer] Alvarado . . . allowed [Medina] to walk away from the scene despite the fact that [Howl] told [Officer] Alvarado she had a fire-arm on her and was in possession of dope."); *id.* at 25 ("Had [Officer] Alvarado done even a cursory investigation in this matter, he would have determined that . . . Howl was one hundred percent innocent of

any wrongdoing.").  These allegations make no sense if Howl's theory was that Medina acted in concert with Officer Alvarado: if Officer Alvarado had instructed Medina to plant drugs there would be no reason investigate Medina.

Moreover, Howl never alleged that Medina was acting at Officer Alvarado's behest when she planted the drugs.  In fact, the complaint is better read as implying the opposite—that Medina was the one making the decisions.  In most of the critical allegations regarding the methamphetamine, Medina is the primary actor, not Officer Alvarado.  *See, e.g.*, *id.* at 21 ("Howl was handed a pack of cigarettes . . . from Medina."); *id.* at 23 ("Medina had been in the sole control of the cigarettes all night . . . .").  The complaint even goes so far as to say the "criminal activities . . . were the sole responsibility of Medina."  *Id.* at 21.  Medina could not have been "solely" responsible for the criminal activities if she was acting at Officer Alvarado's behest.

When read in this context—the repeated emphasis on Medina's responsibility for the drugs, the repeated emphasis on Officer Alvarado's misplaced reliance on information he received from her, and the lack of a contention that Officer Alvarado told Medina to plant the drugs—Howl's allegation that "[Officer] Alvarado intended to falsely arrest and accuse [him]" is best understood as alleging that Officer Alvarado was set on arresting Howl from the beginning because Medina had informed him that Howl was in possession of drugs, *see id.* at 23 ("[Officer] Alvarado planned on arresting [Howl] for alleged possession of paraphernalia before the stop. . . .  Medina was working as an informant for . . . [Officer] Alvarado."), and that the arrest and accusations were "false" because Medina had planted the drugs, *see id.* at 21 ("[The] criminal activities . . .

2

were the sole responsibility of Medina.").  Because the majority fails to place in context

Howl's allegation that Officer Alvarado "intended to falsely arrest and accuse [him]," it

mistakenly finds this allegation sufficient to allege fabrication on Officer Alvarado's part.

Slip Op. at 9.[1]

The majority also places considerable weight on Howl's statement in his response

to the motion to dismiss that he "was set up for an illegal, wrongful arrest and malicious

prosecution by [Officer] Alvarado."  Aplt. App'x at 58; *see* Slip Op. at 10.  First, and

most fundamentally, this statement does not appear in the complaint.  But even

considering this statement, it can be read two ways.  It can be read as saying Howl was

set up by Medina and then wrongfully arrested by Officer Alvarado.  Or it can be read as

saying that he was both set up and arrested by Officer Alvarado.  The majority adopts the

latter reading.  The majority's interpretation, however, overlooks the preceding sentence,

which states that "[Medina] placed the alleged contraband in . . . Howl's pick-up truck

and in the cigarette wrapper."  Aplt. App'x at 58.  When viewed in this context, the first

reading is more likely.

The other statements highlighted by the majority are either consistent with or

support this understanding.  For example, when Howl addressed *Malley v. Briggs*, 475

U.S. 335, 345 (1986), in his response to the motion to dismiss, *see* Slip Op. at 10–11, he

---

[1] For the same reason, I am unpersuaded by the majority's reliance on Howl's allegation that Officer Alvarado "falsely arrested Plaintiff without probable cause and then maliciously prosecuted Plaintiff knowing that he was innocent of any criminal activity," Aplt. App'x at 27, which the majority concludes put Officer Alvarado on notice of a fabrication theory.  *See* Slip Op. at 9.

did so by specifically referring to what the officer *should have known*, not what the officer actually knew. Aplt. App'x at 57. Howl's use of "should have known" rather than "known," bolsters the conclusion that Howl's argument below was that Officer Alvarado should have known Medina planted evidence, not that he already knew.

In the end, the majority fails to draw attention to a single allegation or statement—either in the complaint, or in the proceedings below—where Howl pointed to Officer Alvarado's (as opposed to Medina's) involvement in the fabrication of evidence against him. Without this fabrication theory, Howl has no basis on which to prevail. If Officer Alvarado did not fabricate evidence, then, as the district court concluded, he had probable cause to arrest Howl and is entitled to qualified immunity. *See Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007) (en banc) ("[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff."); *United States v. Swingler*, 758 F.2d 477, 487 (10th Cir. 1985) ("The fact that such evidence would not be admissible for the purpose of proving guilt at trial d[oes] not . . . make it unusable as a source of probable cause.").

In sum, the allegations in Howl's complaint simply did not put Officer Alvarado on notice of a fabrication theory. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). For these reasons, I would affirm the district court. I respectfully dissent.