**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SILVAN WARNICK,

           Plaintiff - Appellant,

v.

BRADFORD COOLEY; ROBIN
WILKINS; ETHAN RAMPTON;
MARK KNIGHTON; JEFFREY
HALL,

           Defendants - Appellees.

No. 17-4065

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:14-CV-00186-JNP)**

---

Mark L. Shurtleff, (Steven A. Christensen, Christensen, Young & Associates, PLLC, with him on the opening brief), Shurtleff Law Firm, PC, Sandy, Utah, for Appellant.

Jennifer Bailey, Deputy District Attorney (Sim Gill, Salt Lake County District Attorney, and David Quealy, Deputy District Attorney, with her on the brief), Salt Lake County District Attorney's Office, Salt Lake City, Utah, for Appellees.

---

Before **TYMKOVICH**, Chief Judge, **LUCERO**, and **HARTZ**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

Silvan Warnick brings this 42 U.S.C. § 1983 malicious prosecution case and a number of state law tort claims against several Salt Lake County prosecutors and investigators. He claims he was falsely accused of tampering with evidence that led to the filing of criminal charges against him that were later dismissed.

The district court granted the defendants' motion to dismiss, and Warnick appealed. We affirm. Like the district court, we find that absolute prosecutorial immunity precludes Warnick from suing the prosecutors for filing charges, and that Warnick has failed to plead the rest of his allegations with sufficient factual specificity.

## I. Background

We take all facts from Warnick's complaint, accepting them as true for purposes of our de novo review. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

Silvan Warnick served as a constable in Salt Lake County. A constable is the local vernacular for a county peace officer. Daniel Herboldsheimer worked for Warnick as a deputy constable. On August 24, 2011, Herboldsheimer was serving as bailiff for the South Salt Lake City Justice Court when a criminal defendant attempted to flee. Herboldsheimer pursued, and eventually both

-2-

Herboldsheimer and Scott Hansen, another deputy constable, apprehended the defendant.

After the fact, Herboldsheimer filed an incident report describing what had happened. According to the complaint, Warnick told Herboldsheimer that his report did not comport with county policy because it contained hearsay observations from others, and not Herboldsheimer's direct observations. In particular, Herboldsheimer's report made incorrect statements about Hansen's use of force to subdue the fleeing defendant.

## A. The Charges

This case concerns what happened next. As Warnick alleges, Herboldsheimer took offense to Warnick's rebuke. Soon afterward, Herboldsheimer contacted the Salt Lake County Attorney's Office and falsely complained that Silvan Warnick and his staff member, Alanna Warnick (Silvan Warnick's wife), had instructed him to falsify his incident report. In addition, Herboldsheimer told the prosecutors that Warnick had made changes to his report—something he took to be falsification.

Three prosecutors were later tasked with investigating this complaint: Bradford Cooley, Ethan Rampton, and Jeffrey Hall. Prosecutor Hall also asked Robin Wilkins and Mark Knighton—investigators for the County—to look into Herboldsheimer's complaint. Warnick contends the prosecutors and investigators together conducted an inadequate investigation even though they had a duty to

-3-

investigate. He also claims they "encourage[d]" Herboldsheimer to provide "false information." App. 9 ¶ 26. All the parties involved "knew or should have known that the information provided by . . . Herboldsheimer was false and that Plaintiff Silvan Warnick had not committed a crime." *Id.*

All the while knowing of Warnick's innocence, the prosecutors and investigators "conspired to file charges" against him. *Id.* ¶ 27. And, in fact, the prosecutors did bring charges—twice. Prosecutor Cooley first brought charges for witness and evidence tampering against both Silvan and Alanna Warnick. At this first hearing on March 13, 2012, the court dismissed one of the charges against Silvan Warnick for a reason unrelated to the merits, and Prosecutor Cooley moved to dismiss the other charge voluntarily. Warnick alleges Prosecutor Cooley moved to dismiss the charge because he "suspected that the Judge would dismiss that charge as well, because there was insufficient evidence to support the State's burden of proof." *Id.* 11 ¶ 33. As for Alanna Warnick—office manager and wife to Silvan Warnick—the court dismissed the charges for lack of probable cause.

Some time later, the prosecutors again brought the same witness and evidence tampering charges against Silvan Warnick. At the probable cause hearing for this second round of charges, the court dismissed the charges for lack of probable cause.

Though both charges were ultimately dismissed, Warnick did not go unscathed. Because of those charges, Warnick contends he lost his position as a constable and his reputation was damaged within the law enforcement community.

## B. The Lawsuit

Silvan Warnick then sued Herboldsheimer, the prosecutors, and the investigators in the District of Utah.[1] He sought relief for (1) malicious prosecution under § 1983,[2] (2) conspiracy to violate his constitutional rights under § 1985, (3) malicious prosecution under state law, (4) negligence, (5) conspiracy, (6) defamation, (7) negligent or intentional infliction of emotional distress, and (8) interference with contractual relations.

The defendants moved to dismiss, but instead of filing a response—and without leave of court—Warnick simply filed an amended complaint. The defendants moved to strike. The court agreed Warnick had not complied with the rules for amending, but let his amended complaint stand. Believing the new complaint did not sufficiently shore up the prior complaint's problems, the defendants renewed their motion to dismiss for substantially the same reasons.

---

[1] Herboldsheimer is no longer part of this lawsuit. Aple. Br. at 4 n.1.

[2] Warnick's complaint does not call his § 1983 claim a "malicious prosecution" claim specifically, but it is the natural label for the allegations he makes.

The magistrate judge assigned to this case recommended the district court dismiss the case, but did not specify whether it recommended the court do so with or without prejudice. Warnick filed a brief objecting to this recommendation. He asked the district court to deny the motion to dismiss, and also hedged with an alternative request: should the district court agree with the magistrate judge and dismiss his claims, Warnick asked for the court to do so without prejudice so that he could amend his complaint.

The district court agreed with most of the magistrate judge's reasoning and granted the defendants' motion to dismiss.[3] The court did not, however, grant Warnick's request for leave to amend, instead dismissing his claims with prejudice.

## II. Analysis

Warnick appeals the district court's decision granting the defendants' motion to dismiss. Alternatively, he asks us to instruct the district court to grant him leave to amend.

### A. The Motion to Dismiss

---

[3] The district court only disagreed with the magistrate judge on the applicability of absolute immunity to a prosecutor's investigative activities. The magistrate judge seemed to have assumed immunity applied to such activities, but the district court explained the investigative activities Warnick complained of could be outside the scope of prosecutorial immunity, and it was premature to conclude otherwise at that stage in the case. App. 229.

We review a district court's dismissal for failure to state a claim under Rule 12(b)(6) de novo. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). In so doing, we accept all of Warnick's well-pleaded allegations as true and view them in the light most favorable to Warnick. *See Colby v. Herrick*, 849 F.3d 1273, 1279 (10th Cir. 2017).

But before we accept Warnick's allegations as true, they must be *well-pleaded* allegations. Determining whether a complaint contains well-pleaded facts sufficient to state a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must determine whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face," not just "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though a complaint need not provide "detailed factual allegations," it must give just enough factual detail to provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not count as well-pleaded facts. *Id.* at 678. If, in the end, a plaintiff's "well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. *Iqbal*, 556 U.S. at 679.[4]

With this standard in mind, we turn to Warnick's various claims.

### 1. The § 1983 Claims

Warnick brought § 1983 claims against both the county prosecutors and the investigators.

We begin with Warnick's allegations against the prosecutors. He claims the prosecutors violated his constitutional rights by (1) filing charges based on "frivolous, scurrilous, and inaccurate information," (2) maliciously investigating and prosecuting him, and (3) "maligning [his] character." App. 13.

Warnick's first allegation fails because the prosecutors are entitled to absolute immunity from liability for their decision to file charges. A district court may grant a motion to dismiss "on the basis of an affirmative defense . . . when the law compels that result." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015). And it is well-established law that "[p]rosecutors are entitled to absolute immunity" for anything they do in their roles as advocates, including their "decisions to prosecute." *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009); *e.g.*, *Snell v. Tunnell*, 920 F.2d 673, 693 (10th Cir. 1990)

---

[4] Warnick argues the district court failed to apply the correct standard, but after reviewing its opinion, we conclude the court correctly applied the standard laid out in *Iqbal* and other cases. *See* App. 170, 178.

("[A] prosecutor who performs functions within the continuum of initiating and presenting a criminal case, *such as filing charges . . .* ordinarily will be entitled to absolute immunity." (emphasis added)).

Warnick argues the prosecutors lost their absolute immunity for filing charges by engaging in other activities that were not related to their roles as advocates. But while prosecutors may not enjoy absolute immunity for activities unrelated to advocacy, that does not mean that engaging in such activities removes their immunity for activities that *are* related to advocacy. As the district court explained, absolute immunity is not "subject to all-or-nothing application"—it can apply to some of the prosecutor's actions while not to others at the same time. App. 228 n.2; *see Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993).

Warnick also contends absolute immunity does not apply to a prosecutor's decision to file charges if the prosecutor had no probable cause to do so. He argues that when a prosecutor did not have probable cause to file charges, only *qualified* immunity can apply. This theory would go a long way toward eliminating absolute prosecutorial immunity altogether, and it is not the law. It is true that activities undertaken by a prosecutor before probable cause exists often lie outside the purview of a prosecutor's role as an advocate. *Buckley*, 509 U.S. at 274. But while a lack of probable cause is a good clue a prosecutor is engaging in activity beyond the scope of advocacy, it is not determinative. Some

functions—like filing charges—are inherently related to a prosecutor's role as an advocate, and therefore protected by absolute immunity whether or not probable cause exists. Hence the well-settled rule that prosecutors are "entitled to absolute immunity for the malicious prosecution of someone whom [they] lacked probable cause to indict." *Id.* at 274 n.5. The cases Warnick cites to the contrary are not applicable, as they concerned the application of qualified immunity to prosecutors' activities outside the advocacy function.[5]

In short, Warnick cannot hold the prosecutors liable for their decision to file charges against him. Absolute immunity shields them from such claims.

Warnick's allegations that the prosecutors maliciously *investigated* him fail for a different reason: he does not plead specific facts demonstrating why the investigation violated the Constitution. Warnick alleges the county prosecutors "encourage[d]" Herboldsheimer to provide "false information." App. 9 ¶ 26. He then, perhaps inconsistently, asserts the prosecutors conducted an inadequate

---

[5] *See Broam v. Bogan*, 320 F.3d 1023, 1031 (9th Cir. 2003) ("To determine whether a state law enforcement officer or a prosecutor is entitled to qualified, as opposed to absolute, immunity a court must decide whether the alleged unconstitutional conduct occurred during the performance of an investigative function," such as "conducting interrogations to determine . . . whether probable cause exists."); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) ("[I]mmunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings. . . . Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts.").

investigation and "knew or should have known that the information provided by Defendant Herboldsheimer was false." *Id.* ¶¶ 26–28. These comprise the entirety of Warnick's allegations about the investigation, aside from further conclusory statements repeating the same.

These bare statements do not amount to a plausible claim of a constitutional violation. The crux of Warnick's complaint about the investigation is that the prosecutors encouraged Herboldsheimer to provide false information. Evidence fabrication could, of course, violate Warnick's Fourth Amendment rights. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004). But Warnick does not tell us what the fabricated statements were—not in his complaint, nor in his briefing, nor even when asked at oral argument. Recall that according to Warnick's own complaint, it was Herboldsheimer who contacted the prosecutors alleging that Warnick had falsified the report. That means the prosecutors could not have fabricated *those* general allegations. We are thus left to ponder what false statements Warnick might be referring to. So too, are we left wondering what specific acts each individual prosecutor engaged in.

The prosecutors cannot reasonably respond to such a conclusory assertion of misdeeds. *See, e.g.*, *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). And without any specific factual allegations, Warnick's complaint simply cannot cross the line from a merely possible claim of evidence fabrication to a plausible one. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th

-11-

Cir. 2011). Indeed, if the prosecutors *did* fabricate evidence, they either did not use that evidence against Warnick, or else were surely incapable fabricators—unable even to convince the judge they crossed the not-so-high bar of probable cause.

This brings us to another problem with the allegations. Warnick's complaint also leaves us in the dark as to whether the prosecutors *used* any of that allegedly concocted evidence against him. That too is fatal to his claim, for, as the Seventh Circuit explained, if "an officer (or investigating prosecutor) fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (quoting *Whitlock v. Brueggermann*, 682 F.3d 567, 582 (7th Cir. 2012)). We are "aware of[] no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution." *Buckley*, 509 U.S. at 281 (Scalia, J., concurring); *Advantageous Cmty. Servs., LLC v. King*, No. 1:17-CV-00525-LF-KK, 2018 WL 1415184, at *8 (D.N.M. Mar. 21, 2018) ("The fabrication of evidence—like the suppression of exculpatory evidence—only matters if it deprives any person of a fair trial and thereby deprives the person of liberty or property."); *cf. United States v. Bagley*, 473 U.S. 667, 678 (1985) ("[S]uppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial."); *Becker v. Kroll*, 494

F.3d 904, 924 (10th Cir. 2007) (a plaintiff cannot prevail on a *Brady* claim "unless the case goes to trial and the suppression of exculpatory evidence affects the outcome").

In sum, because Warnick does not plead facts showing what false evidence the prosecutors fabricated, or how they used it, his allegations fail to state a claim that the prosecutors' investigation violated his constitutional rights.

We meet a similar inadequacy in Warnick's allegation that the prosecutors violated his rights by "maligning his character" and subjecting him to "public ridicule and loss of business." App. 13–14 ¶¶ 41, 47. Putting to one side the fact that Warnick has not explained in what way these actions violated his constitutional rights, Warnick once again provides no specifics. He does not tell us what the prosecutors said about him. If he simply means the prosecutors maligned his character by bringing charges, we have already explained the prosecutors cannot be brought to court for such harms. At bottom, Warnick's complaint simply does not provide enough detail for us to infer a viable claim.

Little changes when we turn to Warnick's claims against the investigators. Warnick included the investigators in almost all the allegations he made against the prosecutors. He added no allegations unique to the investigators (except that, since the investigators cannot and did not bring charges, Warnick only alleges they *caused* charges to be filed, though without explaining how). Left again with

no specific factual allegations from which to infer a plausible claim, we hold these claims fail to state a claim too.  *See Iqbal*, 556 U.S. at 678–79, 680–81.[6]

### 2. The § 1985 Claims

In the same vein as his § 1983 claim, Warnick alleges the prosecutors and investigators violated § 1985 by conspiring to bring false charges against him. The district court apparently assumed Warnick was making a claim under section three of § 1985, and concluded he failed to state a claim because he did not allege the prosecutors and investigators were motivated by animus against a protected class of persons.  App. 234 (quoting *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)); *see Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Warnick devotes all of one page to his § 1985 claim in his briefing, and does not explain why the district court's rationale was mistaken.  Given no reason to doubt the district court's conclusion, we consider Warnick's argument waived.

---

[6] Warnick urges us to take into account the transcripts for the probable cause hearings, claiming these make good the factual holes in his complaint.  On review of a Rule 12(b)(6) motion, we consider the complaint "as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The prosecutors and investigators argue Warnick's complaint did not incorporate those documents by reference and that we should not take judicial notice of them.  We decline to decide this dispute, as the transcripts would not change our conclusion.  At most, these transcripts only show the prosecutors did not have probable cause to charge Warnick.  That may be "consistent with" Warnick's theory of their wrongdoing, but it is "just as much in line with" lawful conduct.  *See Twombly*, 550 U.S. at 554.  The transcripts do little to flesh out Warnick's allegations regarding the investigation.

-14-

*See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998). But even if we considered the argument, the district court was correct: Warnick failed to provide any specific allegation of a motive based on racial or class-based discrimination, and such is required to state a § 1985(3) claim. *See Griffin*, 403 U.S. at 102.[7]

### 3. The State Law Claims

The district court also dismissed all of Warnick's state law claims, holding some barred by the Utah Governmental Immunity Act and the rest insufficiently pleaded. App. 234–36. Warnick does not challenge the district court's dismissal of his state law claims in his opening brief, so he has forfeited any argument on that point. *See United States v. Fisher*, 805 F.3d 982, 991 (10th Cir. 2015).[8]

### B. Leave to Amend

Warnick contends that even if his complaint is deficient, the district court erred by dismissing his claims with prejudice. He claims he should have been given a chance to amend his complaint a second time.

---

[7] We assume the district court was correct that Warnick attempted to state a claim under section three of § 1985, and Warnick has not argued otherwise.

[8] In his brief, Warnick also seems to argue the prosecutors and investigators retaliated against him for engaging in a constitutionally protected activity. Aplt. Br. at 24. Since Warnick did not raise this claim in his complaint, we do not address it. *See BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1204 (10th Cir. 2016). Even if he had, the argument is inadequately briefed. *See Adler*, 144 F.3d at 679.

We review a district court's decision denying a plaintiff leave to amend for abuse of discretion. *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994). Courts are supposed to give leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Indeed, Rule 15(a)'s purpose is "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

Yet, as our standard of review demonstrates, the decision still lies within the district court's discretion. *Id.* A district court may deny leave to amend upon "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). A court may also deny leave to amend on timeliness grounds, *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005), or where a plaintiff fails to file a written motion and instead "merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm." *See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010).

The district court gave several reasons for refusing to allow Warnick to amend his complaint. Warnick (1) did not file a proper motion, (2) failed to provide the court with a proposed complaint as local rules required, *see* DUCivR

15-1, and (3) requested leave to amend nearly three years after filing his first amended complaint. App. 237–38. The court also thought it likely that Warnick could not cure the deficiencies in his complaint. Warnick's first amendment had not done the job. And even considering the new facts Warnick mentioned in his objections to the magistrate judge's recommendation, the court found those facts were not sufficient to state a claim either. *Id.* at 238 n.7. It thus denied Warnick the opportunity to amend.

We conclude the district court's decision was well within its discretion. Warnick complains the district court should not have taken into account the tardiness of his request (nearly three years after his first amended complaint). The delay in his case, Warnick says, could only be laid at the feet of the court's own scheduling, not his negligence.

But even if we eliminate timeliness as a consideration, the district court still had ample reason to deny Warnick's request. Warnick did not file a written motion for leave to amend. Instead, his brief objecting to the magistrate judge's recommendation "merely suggested [he] should be allowed to amend if the court concluded [his] pleadings were infirm." *Garman*, 630 F.3d at 986. We have already held that is not enough. *Id.* And Warnick also failed to let the district court know just how he intended to fix his complaint. Contrary to the local rules of the district court, he did not file a proposed amended complaint—leaving the district court and the defendants to wonder what the basis of amendment might

-17-

be. Considering all this—and considering too that Warnick had once before amended without leave of court, and the court had allowed it—we hold the district court did not abuse its discretion.

### III. Conclusion

We therefore **AFFIRM** the district court's dismissal of Warnick's claims with prejudice.